(35 South. 359.)

No. 14,626.

UNION CASUALTY & SURETY CO. v. SHELBY et al.*

(June 22, 1903.)

INSURANCE AGENT—LIABILITY TO COMPANY.—UNPAID PREMIUMS—EVIDENCE.

1. This case involves only questions of fact. (Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; George H. Théard, Judge.

Action by the Union Casualty & Surety Company against Edwin Shelby and another. Judgment for plaintiff, and defendants appeal. Affirmed.

Clegg & Quintero, for appellants. Omer Villeré and Howe, Spencer & Cocke, for appellee.

PROVOSTY, J. Counsel for plaintiff suggests that the appeal cannot be entertained, because no amount is mentioned in the appeal bond. In the case of Eschert v. Harrison, 29 La. Ann. 860, this court had occasion

---

*Rehearing denied November 30, 1903.

to pass on the effect of such an omission, and to hold it to be harmless; the order granting the appeal and fixing the amount of the bond being read into the bond.

The principal defendant, Edwin Shelby, was for a number of years the agent of plaintiff, the Union Casualty & Surety Company, of St. Louis, Mo., in the insurance business, and this suit is for the recovery of a debt alleged to have grown out of the agency for premiums unpaid on policies issued by the agency. Plaintiff contends that defendant is responsible personally for the premiums, and defendant does not deny that he originally was, but pleads various reasons why he has become released from the debt. Defendant also makes a reconventional demand in damages for breach of contract. The other defendant, Miles, is sued as surety on the defendant Shelby's bond. He makes various defenses, which will be considered hereafter.

We dismiss the reconventional demand at once. It can hardly be that it is being seriously urged, since the record shows beyond question that the contract was not for a fixed term, and that it was dissolved with the consent of defendant.

The defendant was originally in partnership with one Bradford for the carrying on of the agency. At the dissolution of the partnership the partners divided the business of the agency, each of them assuming the liability of the partnership for the premiums outstanding on policies issued in the line of business retained by himself, and being released from all liability for outstanding premiums in the line retained by the other partner. Defendant denies this assumption, insisting that all he did was to assume the collection of the outstanding premiums. We must say that his statement in that regard derives a great deal of support from the conduct of the parties, who, during the more than five years of the continuance of the agency after the dissolution of the partnership, never once said a word about his paying this balance, or about his allowing any part of his large commissions of over $8,000 a year gross to go in diminution thereof; but he does not deny that the partnership was liable for the debt, and he produces neither witness nor paper going to show his release from his virile share thereof, nor even in so many words says that he was released,

but in a rather vague sort of way contends that he protested against taking the line of business assigned to him in the division, and was assured by the officer representing the plaintiff company in the matter of the making of the division that the company would be satisfied with his efforts in the collection of the premiums; but, in the first place, this officer was without authority to give a release of the debt, and, in the second place, there is a contemporaneous document, executed apparently for the express purpose of serving as evidence, in which he declares that his partner, Bradford, has assumed $8,729.18 of Shelby & Bradford's account with the company, and that he has assumed the balance as shown by the books, $5,590.76. The contention that he assumed merely the collection of the debt, and not the debt itself, would be plausible, if his liability had theretofore gone no further than the collection; but in view of the fact that his liability on the partnership debt was of the debt itself, and not merely of its collection, we think this assumption must be taken to have been of the debt itself, and not merely of its collection.

This dissolution of partnership and assumption of debt was in March, 1894. By the following March the accounts of defendant, as kept on his books, had got into a tangle, and he was called to the home office in St. Louis with his books, in order that things might be straightened out. He was then required to open a new set of books, and to furnish two notes of $1,250 each, with satisfactory indorsements, to serve as collateral security for the then existing debt. In the new set of books was to be entered all business pertaining to policies issued after the 1st of the then current month of March, and in the old set of books all matters relating to policies issued before that date. The outstanding premiums as per the old set of books constitute what is termed in this case the old debt, and those in the new set of books constitute the new debt. The old debt is admitted by the defendant, on cross-examination, to have amounted to $9,547.31 in March, 1899, and the preponderance of the evidence is that on this amount the only credit defendant is entitled to is $2,994.16, leaving due $6,553.15. Plaintiff claims a smaller amount; that is, $6,401.52. From this must be de-

ducted defendant's commission of $1,600.38, leaving the balance due by him on the old debt $4,801.14. At the termination of the agency defendant turned over to plaintiff claims for $12,502.05 of outstanding premiums. Of these plaintiff has collected $5,-766.06, and admits to have canceled the policies for $1,525.97 more, leaving still outstanding, according to plaintiff's account, $4,760.02; from which would have to be deducted $729.60, defendant's net commission on the $5,766.06 collected, leaving a balance of $4,-030.42, from which would have to be made a further deduction of defendant's commission of $1,108.33, leaving the balance of $2,-922.09 still due by defendant.

Defendant claims that the $12,502.05 of uncollected premiums which he turned over to plaintiff was received by plaintiff in full payment of the debt, and not merely for collection. We think the weight of the evidence is against this contention. We have read carefully the letters on pages 294, 295, 296, and 297 of the transcript, to which we are referred by defendant's counsel. Some expressions in these letters tend to support defendant's contention, but others tend to the other way.

We have been much impressed with the statements made in the supplemental brief filed in behalf of defendant, and, could we find support for them in the record, or even could we be satisfied that by remanding the case they could be supported by evidence, we should not hesitate to do so. We have been most favorably impressed with the whole attitude of the defendant Shelby in the case, and would be disposed to extend to him every opportunity to come to a fair settlement with plaintiff. In the meantime, however, and in the present condition of the record, we are constrained to take the account as stated above.

The defenses of the surety, as stated in the brief, are as follows:

"It is not shown or admitted that there was any obligation or duty outside of the main contract.

"Second. It is shown abundantly that the contract with Shelby, even if it was such as contended by plaintiff, was constantly and continuously ignored by the company.

"Under their theory they extended time and changed the terms of the contract with the principal, and therefore discharged the surety.

"Third. The company has, by its conduct, if their theory be true, increased the risk of the surety, and placed it beyond his power to protect himself. The record teems with proof of the company's bad faith towards the surety, if Shelby was their agent on the terms they now contend for.

"Fourth. And if the theory of plaintiff be true, and the calculation of the district judge accepted, the surety is condemned for an obligation or indebtedness existing before his bond, and not contemplated or covered by the bond."

We find absolutely no support for any of these contentions. The bond was given to respond for whatever amount defendant might be found to be owing on the settlement of the affairs of the agency, and nothing else is now being demanded of the surety.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be affirmed, with costs.